UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES LINCOLN, III** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-393** |
| **BOBBY DANNER ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Defendants' Motion to Dismiss Plaintiff's RICO claim (R. Doc. 22), Motion for Summary Judgment (R. Doc. 25), and Motion for Summary Judgment on Counterclaim (R. Doc. 26). For the following reasons, the Motion to Dismiss and Motion for Summary Judgment are GRANTED. The Motions for Summary Judgment on Counterclaim is GRANTED IN PART.

## BACKGROUND

Plaintiff alleges that he entered into a verbal agreement with Defendant Bobby Danner to become a long-term tenant at a set daily rate at the Defendant Olivier House Hotel ("the Hotel") in the French Quarter of New Orleans. He alleges that during his three-month stay, the agreed upon rate was increased

1

significantly and without warning during holiday weekends such as the Super Bowl and Mardi Gras.  He further contends that these increases prevented him from paying the full amount owed on the room.  On February 22, 2013, Plaintiff alleges that Bobby Danner demanded that Plaintiff leave the Hotel immediately and refused to allow him to take any of his personal belongings unless he paid his outstanding bill in full.  Plaintiff was unable to do so and therefore left the Hotel without his belongings.  As a result of the incident, Plaintiff has brought claims for state law conversion, improper ejection of a guest from a hotel, price gouging, and improper eviction of a leasee.  Plaintiff further contends that the Defendants violated the Racketeer Influence and Corrupt Organizations Act ("RICO") by conspiring to dramatically increase the rate of rooms during holiday weekends.  Defendants subsequently filed a counterclaim against Plaintiff alleging that he owes $6,556.25 in unpaid hotel rental fees and asserting a privilege on the property that Plaintiff left at the Hotel.

      Defendants have filed three motions presently before the Court.  First, Defendants request the dismissal of Plaintiff's RICO claims in light of his failure to timely file a RICO case statement. Second, Defendants request summary judgment on both Plaintiff's claims and their counterclaim.  This Court will discuss each Motion in turn.

## LEGAL STANDARD

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The Court need not, however, accept as true legal conclusions couched as factual allegations.[4]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[6] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[7]

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 667.

[5] *Id.*

[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

[7] *Lormand*, 565 F.3d at 255–57.

to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[12]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[13]  "We do not . . . in the absence

---

[8] Fed. R. Civ. P. 56(c) (2012).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[11] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[13] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

### A. Motion to Dismiss RICO Claims

On January 19, 2015, this Court issued its RICO standing order, directing Plaintiff to file a RICO case statement within 20 days of the order. Plaintiff failed to do so, and Defendants filed the instant Motion to Dismiss on that ground shortly thereafter. Because his former attorney failed to file the RICO case statement, Plaintiff fired him and has proceeded in this action *pro se*. On July 16, 2015, Plaintiff filed a *pro se* RICO case statement. On that date, he also filed a *pro se* response to Defendants' Motion to Dismiss explaining the delay and his difficulty with former counsel.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may in its discretion dismiss any action based on the failure of the plaintiff to prosecute or comply with any order of the court.[16] In addition, Federal Rule of Civil Procedure 16(f) allows the Court to sanction a party for failing to obey a pretrial order. The Fifth Circuit has instructed that when considering involuntary dismissal, a court should examine "'aggravating factors,' such as (1)

---

[14] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[15] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[16] *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988); *Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 749 (5th Cir. 1987).

the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct."[17]

In this case, it is apparent that Plaintiff's counsel was responsible for the delay and failure to comply with the court's order.[18] Plaintiff took necessary action to move his case forward by filing the required statement after he experienced difficulty finding new counsel. Defendants have made no showing of prejudice caused by this delay or that the delay was intentional on Plaintiff's part. Accordingly, this Court does not feel that the harsh sanction of involuntary dismissal is warranted in this case.

After Plaintiff filed his RICO case statement, however, Defendants filed a reply in which they pointed out several deficiencies in Plaintiff's allegations. Specifically, Defendants allege that Plaintiff's allegations fail to meet the plausibility standard set forth by *Twombly*.[19] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]

---

[17] *Ford v. Sharp*, 758 F.2d 1018, 1021 (5th Cir. 1985); *Markwell v. County of Bexar*, 878 F.2d 899, 902 (5th Cir. 1989); *Price v. McGlathery*, 792 F.2d 472, 474–75 (5th Cir. 1986).

[18] That said, this Court does not endorse Plaintiff's unsupported assertions of collusion between his former counsel and counsel for Defendants. Plaintiff is strongly advised to resist making such allegations in future pleadings without supporting evidence.

[19] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that the Defendants violated RICO through their involvement in a conspiracy to fix hotel prices in the French Quarter during the Super Bowl and Mardi Gras.  In order to state a RICO claim, there must be "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[21]  Plaintiff's case statement does not, however, sufficiently establish the Defendants involvement in an enterprise.

> "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise. . . . If the enterprise alleged is an "association in fact" enterprise, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure. . . . Finally, the plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts.[22]

Plaintiff makes only the conclusory allegation that Defendants made agreements "in illegal restraint of trade for price gouging and illegal billing with other New Orleans hotels and competitors in the hotel management and guest services industries." Plaintiff provides no factual support for this allegation.  In addition, his case statement explicitly states that the "Danner Family Enterprise or association-in-fact . . . does not appear to have any existence separate and apart from its pattern of racketeering activity."  He also repeatedly refers to the LLC Defendants as "shams, having no real operative existence."   Accordingly,

---

[21] *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 912 F. Supp. 2d 404, 420 (E.D. La. 2012) aff'd, 567 F. App'x 945 (Fed. Cir. 2014).

[22] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

7

Plaintiff has failed to state a claim under the RICO Act against Defendants.

In light of Plaintiff's *pro se* status, this Court informed Plaintiff at a status conference on July 16, 2015 that it had doubts regarding the viability of his RICO claims and granted him an additional 30 days to amend his pleadings.[23] Plaintiff failed to make any amendments or file any additional memoranda to support his claims. Because the Court has already provided Plaintiff with the opportunity to amend his pleadings, his RICO claims are dismissed with prejudice.

### B. Motion for Summary Judgment

Defendants have also moved for summary judgment on all of the claims made in Plaintiff's Complaint, and Plaintiff has failed to respond to that Motion. This does not, however, mean that the Court may grant the Motion as unopposed. Rather, the Fifth Circuit approaches the automatic grant of dispositive motions with considerable aversion.[24] Indeed, on a motion for summary judgment, the moving party still "has the burden of establishing that there is no genuine dispute of material fact; and, unless that party does so, a court may not grant the motion, regardless [of] whether any response is filed."[25]

---

[23] Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

[24] *See, e.g.*, *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) ("[The] failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint."); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); *John v. State of La. Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 709 (5th Cir. 1985).

[25] *Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012) (citing *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277,1279 (5th Cir. 1985)).

In this District, the failure to file an opposition requires the Court to deem the moving party's statements of uncontested material facts admitted.[26] Nonetheless, the moving party must still make a prima facie showing of its entitlement to judgment.[27] This Court will address each of Plaintiff's allegations in turn.

   *1. Conversion*

Plaintiff's Complaint alleges that Defendants converted his property when they retained it after he was evicted from the Hotel for failure to pay his bill. "[T]he tort of conversion is an act in derogation of a plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time."[28] Defendants correctly argue, however, that their retention of Plaintiff's property was not unlawful because they had a right to retain it as a result of the innkeeper's privilege. Indeed, Louisiana Civil Code articles 3232 through 3236 provide that a hotel has a privilege on the property of anyone who stays at the hotel and that the hotel may "retain property, and have it sold, to obtain payment of what such persons may owe them."[29] Clearly, then, Defendants were authorized in retaining Plaintiff's property when he failed to pay his hotel bill, and therefore, Plaintiff's claims for conversion are dismissed.

---

[26] *See* L .R. 56.2.

[27] *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1999).

[28] *Birch v. Birch,* 55 So. 3d 796, 800 (La. App. 2 Cir. 2010) (internal quotation marks omitted).

[29] La. Civ. Code art. 3233.

*2. Notice to Vacate*

Plaintiff next contends that Defendants violated Louisiana Revised Statute sections 21:75 and 76 by improperly ejecting him from the Hotel. Plaintiff alleges that because there was no agreed upon departure date, he should have been given at least one hour's notice prior to being evicted from the Hotel. Defendants agree that Louisiana Revised Statute section 21:75 stands for the proposition that a hotel tenant is entitled to one hour's notice before ejection but argue that Plaintiff was not ejected. Defendants contend that Plaintiff voluntarily left the premises.

Louisiana Revised Statute section 21:75 states that:

No person shall remain in a hotel or motel, or in or on a campsite, where his term or stay has expired if the person has been given written notice of his agreed departure date and checkout time at the time he registered at the motel, hotel, or campground, and the person has been given verbal or written notice to leave the hotel or motel room, or campsite at least one hour prior to the time required to leave.

Section 21:76 states that:

The person and other occupants, and their personal belongings, may be removed by the appropriate lawful authority, provided the conditions of R.S. 21:75 have been met. No action for damages or otherwise shall be allowed in a court of law against the owners, operators, or managers of the hotel, motel, or campground or an appropriate lawful authority for reasonable exercise of rights pursuant to the provisions of this Chapter.

When read together, these statutes clearly stand for the proposition that a hotel must give a tenant written notice of departure time at the time he checks

10

into the hotel and an hour's advance notice to leave before the "appropriate lawful authority" is called to forcibly remove him or her from the hotel. Plaintiff does not allege that any lawful authority was used to remove him from the Hotel. Indeed, his Complaint states that Danner threatened to call the police but that Plaintiff subsequently left the hotel on his own accord. Accordingly, Louisiana Revised Statutes sections 21:75 and 76 are inapplicable to the situation at hand, and Plaintiff's claims are dismissed.

    *3. Price Gouging*

Plaintiff next contends that Defendants violated Louisiana Revised Statute section 21:21(A)(7) by charging a hotel rental rate during holiday weekends in excess of 30% over the regular rate. Defendants contend that § 21:21 does not apply to a hotel, but instead, applies to third parties seeking to resell a room at the hotel .

Revised Statute § 21:21(A)(7) states that no person shall:

> Sell or offer to sell accommodations at any hotel during the weekend of the National Football League Superbowl game, Bayou Classic game, Sugar Bowl game, and during the period of the National Collegiate Athletic Association Final Four Tournament, in excess of thirty percent more than the highest advertised rack rate charged by the hotel, inn, or boarding house.

By its plain language, this statute prohibits guests from reselling a hotel room for 30% more than was advertised by the hotel during certain events. This interpretation is supported by the fact that the statute is located in Chapter 2 of Title 21 (Hotels and Lodging Houses), entitled "Offenses by Guests." The remainder of the statute prohibits guests from various offenses aimed at

11

defrauding a hotel. Plaintiff's claims under § 21:21 are therefore dismissed.

*4. Improper Eviction of Leasee*

Plaintiff also contends that his arrangement with the Hotel was a lease and that, therefore, his lease was improperly terminated. He alleges that according to Louisiana Civil Code articles 2727 through 2729, a month-to-month lease must be terminated by ten-day-advanced, written notice. While true, Plaintiff has made no showing that his tenancy at the Hotel was on a month-to-month basis. Notably, his initial stay was to be for 22 days and was thereafter extended. At all times, Plaintiff was charge a daily rate. Even assuming, without deciding, that Plaintiff's arrangement with the Hotel was a lease, his initial 22-day lease would have reconducted on a day-to-day basis pursuant to Civil Code article 2723. Article 2728 states that notice of termination "[i]n a lease whose term is measured by a period shorter than a week, [shall be given] at any time prior to the expiration of that period." Accordingly even if his arrangement with the Hotel was a lease, Plaintiff was given ample notice of termination, and his claims based on the violation of lease law are dismissed.

**C. Motion for Summary Judgment on Defendant's Counterclaim**

Defendants contend that Plaintiff has an outstanding balance of $6,556.25 for his stay at the Hotel. They allege that pursuant to Louisiana's law on open accounts Defendant Oliver House Property Management, LLC is owed this amount plus judicial interest, the cost of storing Plaintiff's personal belongings, and attorney's fees and costs. They also ask this Court to recognize their inkeeper's privilege on the property left at the Hotel by Plaintiff. They have

12

moved for summary judgment on this claim.

Plaintiff primarily contests that Defendants support their Motion with unauthenticated and unsworn evidence, including a billing log and photocopies of receipts accompanied by handwritten explanations. The log, a form document containing handwritten notations, purports to keep track of the each day that Plaintiff stayed at the Hotel and the rate charged on that day. The exhibit does not indicate by whom the document was created, from where the data in the document was collected, or whether this information was kept in the regular course of business. The log is not accompanied by any affidavit attesting to its authenticity. The photocopied receipts are accompanied by handwritten explanations and the initials "BD," presumably Defendant Bobby Danner. The receipts are likewise unauthenticated, and the handwritten notations are unsworn.

"[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."[30] "It is well-settled that, to be admissible as summary judgment evidence, documents must be authenticated by and attached to an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."[31] "Unsworn

---

[30] *Roucher v. Traders & Gen. Ins. Co.*, 235 F.2d 423, 424 (5th Cir. 1956); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[31] *Haynes v. Pennzoil Co.*, 141 F.3d 1163 (5th Cir. 1998) (internal quotations and alterations omitted); 10A ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2722 (3d ed.). *See Johnson v. Spohn*, 334 F. App'x 673, 678 (5th Cir. 2009) (holding that Hospital's notes, letters, and committee minutes were admissible when properly authenticated by an affidavit of the Vice President of Medical Affairs attesting that "the documents were

13

documents are . . . not appropriate for consideration.[32]  Accordingly, this Court declines to consider the aforementioned exhibits in considering Defendants' Motion for Summary Judgment.

That said, Plaintiff's opposition to this Motion is devoid of any assertion that (1) he did not stay at the Hotel from December 9, 2012 to February 22, 2013, or (2) he has fully paid the amounts owed for those nights.  It appears that the only point of disagreement between the parties is the rate at which Plaintiff was charged.  Plaintiff asserts that he never agreed to pay the inflated rates charged by the Hotel during Superbowl Weekend or Mardi Gras.  Defendants contend that Plaintiff was advised in advance of these weekends that he would be charged a higher rate and was given the option to either vacate the suite or move to a less expensive room; he declined both options and remained in his suite.  In short, Plaintiff disputes the amount he owes to Defendant on open account, and Defendant has provided no authenticated or sworn evidence to prove that amount.  "In order to prevail in a suit on an open account, the creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing evidence regarding its accuracy."[33]

---

business records compiled at the time of the hearings during the regular course of business by individuals with personal knowledge of the information contained therein.").

[32] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[33] *CACV of Colorado, LLC v. Spiehler*, 11 So. 3d 673, 675 (La. App. 3 Cir. 2009) ("In this case, there was no evidence regarding the accuracy of the account. CACV bought the indebtedness. No evidence was introduced regarding the purchases underlying the debt, no receipts, invoices, billing statements, or statements of account were introduced to support the accuracy of the amount claimed. There was no way for the court to verify the accuracy of the amount claimed. At the close of Plaintiff's case, there was insufficient data to determine whether the amount claimed was accurate. Accordingly, the trial court correctly found that

Defendants have failed to do so. Accordingly, a material dispute of fact exists, and Defendants are not entitled to summary judgment of this claim.

This Court has no trouble, however, holding that Defendants are entitled to a privilege on the personal belongings that Plaintiff left at the Hotel. As discussed above, Louisiana Civil Code articles 3232 through 3236 provide that a hotel has a privilege on the property of anyone who stays at the hotel and that the hotel may "retain property, and have it sold, to obtain payment of what such persons may owe them."[34] Because Plaintiff does not dispute that he stayed at the hotel and failed to pay his bill, this Court holds that Defendants satisfy the requirements for the innkeeper's privilege. Accordingly, Defendants' Motion for Summary Judgement on Counterclaim is granted to the extent that this Court recognizes their privilege on Plaintiff's personal belongings.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss and Motion for Summary Judgment are GRANTED. The Motion for Summary Judgment on Counterclaim is GRANTED IN PART. All of Plaintiff's claims are DISMISSED WITH PREJUDICE. Only Defendant's counterclaim remains pending.

New Orleans, Louisiana, this 10th day of September, 2015

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

CACV failed to prove the account.").

[34] La. Civ. Code art. 3233.